# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Sheilar Smith, Kasandra Anton, Bonnie Bailey, Peggy Wise, and June Schwierjohn, on behalf of themselves, individually, and on behalf of all others similarly situated, and on behalf of the OSF Plans,<br><br>Plaintiffs,<br><br>v.<br><br>OSF HealthCare System; The Sisters of the Third Order of St. Francis Employees Pension Plan Administrative Committee; and Retirement Committee for the Retirement Plan for Employees of Saint Anthony's Health Center,<br><br>Defendants. | No. 3:16-cv-00467-SMY-RJD |

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT ("Settlement Agreement") is entered into by and between Plaintiffs, as defined in § 1.17 below, on the one hand, and Defendants, as defined in § 1.8 below, on the other. Plaintiffs and Defendants are referred to collectively in this Settlement Agreement as the "Parties." Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1 DEFINITIONS.

    1.1    "*Action*" shall mean: The class action *Smith, et al., v. OSF HealthCare System, et al.*, No. 3:16-cv-00467, ("Smith") an action pending in the United States District Court for the Southern District of Illinois. The claims from *Bailey, et al. v. OSF HealthCare System, et al.*, No. 1:16-cv-01137 (C.D. Ill.), a class action with similar claims that was filed in the Central District of Illinois on May 3, 2016, were included in the *Smith* Fourth Amended Class Action Complaint, ECF No. 138, by stipulation of the Parties following voluntary dismissal of that action on September 28, 2017. *Bailey v. OSF HealthCare Sys.*, No. 1:16-cv-01337-SLD-TSH, 2017 WL 4319113 (C.D. Ill. Sept. 28, 2017).

    1.2    "*Church Plan*" shall mean: A plan which meets the definition of a "Church Plan" under ERISA § 3(33), 29 U.S.C. § 1002(33), and is thus exempt from the provisions of Title I and Title IV of ERISA.

    1.3    "*Class Counsel*" shall mean: Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC.

1.4 "*Class Notice*" shall have the meaning provided in § 2.2.1.

1.5 "*Class Settlement Amount*" shall mean the Cash Contribution set forth in § 7.1.1.

1.6 "*Complaint*" shall mean: The Fourth Amended Class Action Complaint filed on October 12, 2017, Dkt. 138.

1.7 "*Court*" shall mean: The United States District Court for the Southern District of Illinois.

1.8 "*Defendants*" shall mean: OSF HealthCare System, The Sisters of the Third Order of St. Francis Employees Pension Plan Administrative Committee, and Retirement Committee for the Retirement Plan for Employees of Saint Anthony's Health Center.

1.9 "*Effective Date of Settlement*" shall mean: The date on which the Court issues the Final Approval Order approving the Settlement contemplated pursuant to the Term Sheet and as set forth in this Settlement Agreement.

1.10 "*ERISA*" shall mean: The Employee Retirement Income Security Act of 1974, as amended, including all duly enacted and finalized regulations promulgated thereunder.

1.11 "*Final*" shall mean: With respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari, or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand. The Parties agree that absent an appeal or other attempted review proceeding, the period after which the Final Approval Order becomes Final is thirty (30) calendar days after its entry by the Court.

1.12 "*Final Approval Order*" shall have the meaning set forth in § 2.2.5.

1.13 "*Incentive Awards*" shall mean: Any monetary amounts awarded to Named Plaintiffs by the Court in recognition of the Named Plaintiffs' assistance in the prosecution of the Action and payable pursuant to §§ 7.1.2 to 7.1.4 below.

1.14 "*OSF*" shall mean: OSF HealthCare System, including by any other name which it is or has been known, and including its current or former predecessors and successors, including but not limited to Saint Anthony's Health Center in Alton, Illinois, which merged into OSF HealthCare System pursuant to a statutory merger on November 1, 2014.

1.15 "*OSF Plans*" shall mean: The Sisters of the Third Order of St. Francis Employees Pension Plan and the Retirement Plan for Employees of St. Anthony's Health Center.

1.16 "*Person*" shall mean: An individual, partnership, corporation, or any other form of organization.

1.17 *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Sheilar Smith, Kasandra Anton, Bonnie Bailey, Peggy Wise, and June Schwierjohn.

1.18 *"Released Claims"* shall have the meaning provided in § 3.1.

1.19 *"Releasees"* or *"Released Parties"* shall mean: OSF HealthCare System, all entities that are considered to be a single employer under Internal Revenue Code § 414, their employees, fiduciaries, administrators, agents, directors, and insurers, including all of the individual defendants and all OSF committees.

1.20 *"Settlement"* shall mean: The settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.21 *"Settlement Class"* shall mean: All vested or non-vested participants of the OSF Plans (and their beneficiaries) as of the date of the filing of the Complaint (April 27, 2016).

1.22 *"Successor-In-Interest"* or *"Successor"* shall mean: A Person's estate, legal representatives, heirs, successors or assigns, and any other Person who can make a legal claim by or through such Person.

1.23 *"Term Sheet"* shall mean: The document entitled "OSF HealthCare System Settlement Term Sheet" dated July 21, 2020.

2   CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT.

2.1 *Effectiveness of This Settlement Agreement.* This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 2.2 through 2.7 shall have been satisfied.

2.2 *Court Approval.* The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 2.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

> 2.2.1 *Motion for Preliminary Approval of Settlement and of Notices.* The Court shall have approved the preliminary approval motion to be filed by Plaintiffs ("Preliminary Motion") by issuing an order (the "Preliminary Approval Order"), including a form of class notice approved by the Court (the "Class Notice"):
>
> (a) Preliminarily approving this Settlement Agreement;
>
> (b) Directing the time and manner of communication of the Class Notice; and

(c) Finding that:

 (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement; (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement; and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement;

 (ii) the Parties may make non-substantive changes to the Class Notice without additional Court approval; and

 (iii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

2.2.2 *Class Certification.*

(a) The Court shall have certified the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Keller Rohrback L.L.P. and Cohen Milstein Sellers & Toll, PLLC as Class Counsel, and with a "Settlement Class" as defined above.

(b) The Parties agree to stipulate to certification of the Action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of July 21, 2020.

2.2.3 *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, Defendants will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost effective forms of notice. The Parties agree, and the Preliminary Approval Order shall provide, that the last known addresses for members of the Settlement Class in the possession of the Plans' current record-keeper(s) will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. Defendants will pay the cost for the notice program as part of the Settlement administration.

2.2.4 *Internet/Publication of Class Notice.* Class Counsel shall give notice by publication of the Settlement Agreement and Class Notice on their firms' websites.

4

2.2.5 *The Fairness Hearing.*

(a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing"), during or after which the Court will, by written order (the "Final Approval Order") determine whether: (i) this Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act of 2015 ("CAFA") have been satisfied; (vi) to award Incentive Award(s) to Named Plaintiffs, and if so, the amounts; and (vii) to award attorneys' fees and further expenses and, if so, the amounts.

(b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

2.2.6 *Motion for Final Approval of Class Action Settlement.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

2.3 *Finality of Final Approval Order.* The Final Approval Order shall have become Final, as defined in § 1.11 of this Settlement Agreement.

2.4 *Compliance with the Class Action Fairness Act.* The Court shall have determined that Defendants complied with CAFA and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

2.5 *Dismissal of Action.* The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

2.6 *No Termination.* The Settlement shall not have terminated pursuant to § 9 below.

2.7 *Establishment of Effective Date of Settlement.* If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 2 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert M. Meyer, the Parties' mediator, who shall make a final determination regarding the Effective Date of the Settlement and whether all the conditions set forth in this § 2 have been satisfied. No portion of the Cash

Contribution described in § 7.1.1 shall be disbursed in the event of such a dispute, pending the mediator's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

3      RELEASES AND COVENANT NOT TO SUE.

   3.1   *Released Claims.* Released Claims shall mean, under state and federal law (including, but not limited to, ERISA), any and all claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Fourth Amended Class Action Complaint by any member of the Settlement Class, except that Released Claims are not intended to include the release of any of the following:

   3.1.1   Any rights or duties arising out of the Settlement Agreement, including the express warranties and covenants in the Settlement Agreement;

   3.1.2   Individual claims for benefits brought pursuant to the OSF Plans' documents that do not arise out of the allegations of the Fourth Amended Class Action Complaint;

   3.1.3   Claims related to any other plan that is merged, adopted or consolidated into the OSF Plans after the execution date of the Term Sheet (July 21, 2020), if such claim pertains to the time before such merger, adoption, or consolidation;

   3.1.4   Any claim arising under ERISA with respect to any event occurring after:

      3.1.4.1   The Internal Revenue Service issues a written ruling that either of the OSF Plans does not qualify as a Church Plan;

      3.1.4.2   The OSF Plans' sponsor elects to be governed by ERISA;

      3.1.4.3   A court of law issues a definitive and final ruling that either of the OSF Plans are not Church Plans;

      3.1.4.4   The Roman Catholic Church disassociates itself from the Plans' Sponsor; or

      3.1.4.5   An amendment to ERISA is enacted and becomes effective as a law of the United States eliminating the Church Plan exemption.

      3.1.4.6   Should any of the events in § 3.1.4 occur, nothing in the Settlement Agreement eliminates or restricts any argument by OSF that it constitutes a church or part of a church for purposes of the church plan exemption.

   3.2   *Release by Named Plaintiffs and Settlement Class.* Subject to § 9 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and their respective spouses, heirs, Successors, principals, agents, assigns, executors, and administrators, and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class directly, indirectly, derivatively, or in any other capacity ever had, now have or hereafter may have. The

Settlement Class covenants and agrees: (i) not to file against any Released Party any claim based on, related to, or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Released Party.

3.3 *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Subject to § 9 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the prosecution of the Action.

4 COVENANTS.

Named Plaintiffs, on behalf of themselves and on behalf of the members of the Settlement Class, and Defendants, hereby covenant as follows:

4.1 *Non-Disparagement.* The Parties, their counsel, and their agents shall refrain from making derogatory or disparaging comments as to the Settlement Agreement, Plaintiffs, Plaintiffs' Counsel, any Releasee, Defendants, the OSF Plans, and Defendants' Counsel.

4.2 *OSF Plans' Status.* Nothing herein shall be construed as an agreement that the OSF Plans have not been, are not, and will not be properly treated as Church Plans or that the OSF Plans were or are subject to ERISA. Similarly, nothing herein shall be construed as an agreement that the OSF Plans are properly treated as Church Plans or that the OSF Plans are not subject to ERISA.

5 REPRESENTATIONS AND WARRANTIES.

5.1 *Parties' Representations and Warranties.*

5.1.1 The Parties to this Settlement Agreement represent and warrant that all information provided, and factual representations made during the course of settlement discussions, are true and accurate. The Parties understand that such information and factual representations are being relied upon by the other Parties to the agreement and agree that the truth and accuracy of all information and factual representations made during the settlement discussions shall constitute a condition precedent of the Parties' obligations hereunder.

5.1.2 Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

5.1.3 Named Plaintiffs represent and warrant, on behalf of themselves and the Settlement Class, that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims against them.

5.1.4 The Parties represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel and in executing this Settlement Agreement they are relying solely upon their own judgment, belief, and knowledge, and the advice and recommendations

7

of their own independently-selected counsel, concerning the nature, extent, and duration of their rights and claims hereunder and regarding all matters that relate in any way to the subject matter hereof; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

5.1.5 The Parties represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

5.2 *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person hereby personally represents and warrants to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal that such individual represents or purports to represent.

6  NO ADMISSION OF LIABILITY.

Defendants deny any and all allegations of wrongdoing made in the Plaintiffs' Fourth Amended Class Action Complaint. Defendants aver that the OSF Plans have been and continue to be properly administered as Church Plans, as defined in Internal Revenue Code § 414(e) and ERISA § 3(33). This Settlement is not evidence of liability of any type.

The Parties understand and agree that this Settlement Agreement embodies a compromise and settlement of disputed claims, and nothing in this Settlement Agreement, including the furnishing of consideration for this Settlement Agreement, shall be deemed to constitute any finding that ERISA governs the Plans and/or of any wrongdoing by any of the Releasees. This Settlement Agreement is made in compromise of disputed claims and are not admissions of any liability of any kind, whether legal, equitable, or factual. Moreover, the Releasees specifically deny any such liability or wrongdoing. Neither the existence nor the terms of this Settlement Agreement shall be offered or received in evidence in any action or proceeding for any purpose, except in an action or proceeding to enforce this Settlement Agreement or arising out of or relating to the Final Order.

7  SETTLEMENT PAYMENTS.

7.1 *The Class Settlement Amount.*

7.1.1 *Cash Contribution*: For Fiscal Years 2021 through 2025, OSF will make annual cash contributions to the OSF Plans of $5 million per year (the "Annual Payment"), for a total of $25 million. OSF may make the Annual Payment in a lump sum at any point during the Fiscal Year or may split the Annual Payment into a number of payments among the OSF Plans throughout the year, at its discretion. Any amount paid in excess of the Annual Payment may be used to reduce subsequent contributions.

7.1.2 *Payment to Class Counsel.* Plaintiffs may apply to the Court for an award of reasonable attorney fees, out of pocket expenses, and Incentive Award(s) to the Named Plaintiffs (together, the "Fee Award"). The Fee Award requested by Plaintiffs and awarded by the Court shall not exceed One Million, Seven Hundred and Fifty Thousand Dollars ($1,750,000.00) (the "Maximum Total Fee"). Any such Fee Award shall be at the sole discretion of the Court, which may award an amount less than One Million, Seven Hundred and Fifty Thousand Dollars ($1,750,000.00). Defendants shall cause the Fee Award to be paid in addition to any other monetary terms set forth in this Settlement Agreement.

7.1.3 *Application for Fee Award.* Class Counsel shall petition the Court for the Fee Award on the date set by the Court in its Preliminary Approval Order. Releasees shall not contest or take any position with respect to any application for the Fee Award that does not exceed the Maximum Total Fee, and acknowledge that these matters are left to the sound discretion of the Court. The procedure for and the allowance or disallowance of any application for the Fee Award that does not exceed the Maximum Total Fee are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating to the Fee Award, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

7.1.4 Defendants shall pay Class Counsel the Maximum Total Fee, or any lesser amount as ordered by the Court in its discretion, thirty (30) calendar days after the Court's entry of the Final Approval Order, notwithstanding the existence of any timely-filed objections thereto, potential for appeal therefrom, or any collateral attack on the Settlement or any part thereof, subject to the obligation of Class Counsel to make appropriate refunds or repayments to Defendants, plus accrued interest (based on the one year Treasury constant maturity rate) within ten (10) calendar days, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or expense award is reduced or reversed.

7.2 *Cost of Notice.* OSF shall pay the cost for Class Notice in addition to the amounts specified above.

8 AGREED UPON PLAN PROVISIONS.

8.1 *Benefits Commitment.* Through Fiscal Year 2025 or until such time as the $25 million is contributed to the OSF Plans as provided in § 7.1.1, if the OSF Plans' Master Trust becomes insufficient to pay benefits as they are due, OSF or any successor to OSF will contribute sufficient funds to pay the accrued benefits payable to Participants under the terms of the OSF Plans as they are due. Nothing in this paragraph reduces any obligation to fund benefits as they are due that may otherwise exist.

8.2 *Plan Mergers.* Through Fiscal Year 2025 or until such time as $25 million is contributed to the OSF Plans as provided in § 7.1.1, if either of the OSF Plans is merged with or into another plan, adopted by additional employers, or consolidated with another plan, participants and beneficiaries in the OSF Plans will be entitled to an accrued benefit post-merger, adoption, or consolidation event that is no less than they enjoyed before that event.

8.3 *Plan Amendment and Termination.* Notwithstanding any other provision of this agreement, OSF retains the right to amend or terminate the OSF Plans at any time, provided that, no amendment may apply retroactively to decrease the benefits of any participant that have already accrued unless necessary to bring the Plan within the provisions of Internal Revenue Code § 401(a), and, upon termination, each OSF Plan participant's accrued benefit shall become nonforfeitable. Prior to any termination during Fiscal Years 2021 through 2025, any unpaid contributions in § 7.1.1 shall be paid into the Master Trust of the Plans.

8.4 *Funding Restrictions*: If the OSF Plans are ever determined to be governed by ERISA, nothing herein shall be interpreted to prevent the Plans from complying with the benefit restrictions of Section 436 of the Internal Revenue Code of 1986, as amended, or any other applicable law, including all restrictions on lump sum payments.

8.5 *Plan Administrative Arrangements.* Commencing sixty (60) days after the Effective Date of Settlement, the Administrator for the OSF Plans will put in place certain arrangements concerning the OSF Plans' administration, notices, and procedures as set forth in detail below.

    8.5.1 *Pension Benefit Statements* Each participant in the OSF Plans may request a statement twice (2) per year, which will be based upon the latest available information regarding his or her accrued benefits and information regarding which of his or her benefits are nonforfeitable benefits, if any, or stating the earliest date on which the benefits become nonforfeitable. Additionally, any participant in the OSF Plans who has terminated service during the Plan Year and who is entitled to a deferred benefit under the OSF Plans will be provided with a statement upon request regarding the nature, amount, and form of such terminated Plan participant's nonforfeitable benefit.

    8.5.2 *OSF Plans' Claim Review Procedure.* The OSF Plans' claim review procedure shall state: The identity of the person or entity that will decide any claim; the time period for filing a claim; if a claim is denied, in whole or in part, the person or entity that will decide any appeal; the time period for filling a claim appeal; and that the information the claimant may provide in support of an appeal will be addressed in the letter denying the claim. OSF will update and distribute a Summary of Material Modification or Summary Plan Description to include these provisions within 210 days of the close of the plan year in which the settlement occurs.

8.6 *Continuing Obligations.* All continuing obligations of the Defendants under this Settlement Agreement or the Term Sheet shall cease if, prior to the expiration of the period of time such obligations are in effect, the Internal Revenue Service issues a written ruling that the

Plans do not qualify as Church Plans or the United States Supreme Court holds that a Church Plan must be established by a church or a convention or association of churches and such holding renders ERISA's church plan exemption inapplicable to the Plans

## 9   TERMINATION OF THE SETTLEMENT AGREEMENT.

9.1   *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

9.1.1   If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that, if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion.

9.1.2   If the Court issues an order in the Action modifying the Settlement Agreement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Court or by the Parties, then, provided that no Review Proceeding is pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the order referenced in this § 9.1.2.

9.1.3   If the Seventh Circuit reverses the Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first (91st) day after issuance of the Seventh Circuit order referenced in this § 9.1.3.

9.1.4   If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first (31st) day after issuance of the Supreme Court order referenced in this § 9.1.4.

9.1.5   If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

9.2     *Consequences of Termination of the Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

9.2.1   The Action shall for all purposes with respect to the Parties revert to its status as of July 21, 2020.

9.2.2   All Releases given or executed pursuant to the Settlement Agreement shall be null and void; none of the terms of the Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of the Settlement Agreement shall be offered or received in evidence in this Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

10      MISCELLANEOUS PROVISIONS.

10.1    *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Settlement Class, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 2 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement, and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 10.1.

10.2    *No Limitation of Remedies.* In the event that either Party breaches the Settlement Agreement, the opposing Party will continue to have any and all remedies for such breach.

10.3    *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

10.4    *Severability.* The provisions of this Settlement Agreement are not severable.

10.5    *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties and approved by the Court.

10.6    *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

10.7    *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or

rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

10.8 *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

> 10.8.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.
>
> 10.8.2 *Singular and Plural.* Definitions apply to the singular and plural forms of each term defined.
>
> 10.8.3 *Gender.* Definitions apply to the masculine, feminine, and neuter genders of each term defined.
>
> 10.8.4 *References to a Person.* References to a Person are also to the Person's permitted successors and assigns.
>
> 10.8.5 *Terms of Inclusion.* Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

10.9 *Further Assurances.* Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

10.10 *Survival.* All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

10.11 *Notices.* Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier:

    A.    IF TO NAMED PLAINTIFFS:

> Lynn Lincoln Sarko
> Laura R. Gerber
> KELLER ROHRBACK L.L.P.
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101-3052
> Fax: (206) 623-3384
>
> Ron Kilgard
> KELLER ROHRBACK L.L.P.

       3101 North Central Ave., Suite 1400
       Phoenix, AZ 85012
       Fax: (602) 248-2822

       Karen L. Handorf
       Michelle C. Yau
       Julie S. Selesnick
       COHEN MILSTEIN SELLERS & TOLL, PLLC
       1100 New York Ave., NW, Suite 500 West
       Washington, DC 20005
       Fax: (202) 408-4699

   B.    IF TO DEFENDANTS:

       Brian T. Ortelere
       Jeremy P. Blumenfeld
       MORGAN, LEWIS & BOCKIUS LLP
       1701 Market Street
       Philadelphia, PA 19103-2921
       Fax: (215) 963-5001

       Abbey M. Glenn
       MORGAN, LEWIS & BOCKIUS LLP
       1111 Pennsylvania Avenue NW
       Washington, DC 20004-2541
       Fax: (202) 739-3001

    Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described above.

    10.12  *Entire Agreement*. This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It supersedes any settlement terms or settlement agreements that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

    10.13  *Counterparts*. This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile or email for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

    IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

          *FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 4TH day of September 2020.

By: _____
Lynn Lincoln Sarko
Laura R. Gerber
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

Ron Kilgard
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012

By: _____

Karen L. Handorf
Michelle C. Yau
Julie S. Selesnick
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
*Class Counsel*

**FOR ALL DEFENDANTS**

Dated this the 17TH day of September 2020.

By: _____
Robert L. Brandfass
SVP, Chief Legal Officer
OSF Healthcare
800 N.E. Glen Oak Avenue
Peoria, IL 61603

15